UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-14176-CIV-MARRA

DAVID LEE BROWN,

    Plaintiff,

vs.

CHARLES A. FELTON, et al.,

    Defendants.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    This matter was tried before the Court on October 17, 2007. Based upon the evidence presented during the bench trial, the designated portions of the transcript from the previous trial conducted on May 22-23, 2001, the Supplemental Pretrial Stipulation, the post-trial submissions of the parties, and otherwise being duly advised in the premises, the Court issues these findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

I.  Introduction

    On July 15, 1996, Plaintiff David Lee Brown ("Plaintiff" or "Brown") filed an action under 42 U.S.C. § 1983 against Miami-Dade County (the "County") and Corporal Leroy Weston ("Defendant" or "Weston") arising from Defendant's alleged use of excessive force. Specifically, Plaintiff claims violations of his constitutional rights under the Eighth and Fourteenth Amendments, alleging Defendant maliciously and sadistically struck him in the mouth. Defendant, however, denies that Plaintiff was struck in the mouth or that he violated Plaintiff's constitutional rights and contends he is entitled to immunity from liability.

A two-day bench trial occurred in May of 2001 before United States District Court Judge James C. Paine. Judge Paine entered judgment in favor of Weston, holding that his actions were protected by qualified immunity, and Plaintiff appealed. On October 2, 2003, the United States Court of Appeals for the Eleventh Circuit reversed Judge Paine's finding of qualified immunity in favor of Weston and remanded the matter for further findings of fact and conclusions of law ("Mandate").[1] The Mandate required further examination of the following factual issues: (1) whether Plaintiff lunged at Defendant or otherwise reasonably posed a danger; (2) whether Defendant struck Plaintiff in the mouth; (3) the effect of the disparity in size between Plaintiff and Defendant on "who did what and when"[2] and (4) whether it was necessary for Defendant to impede Plaintiff's movement towards an officer or others. (Mandate at 5-8, 11.) In highlighting these issues for consideration on remand, the Mandate stated that Judge Paine's Order did not "resolve the penultimate factual dispute in this case as to whether [Plaintiff] lunged or otherwise reasonably posed a danger to [Defendant]." (Mandate at 5.) Moreover, the Mandate notes that Judge Paine's Order "implicitly suggest[ed]" that [Defendant] inflicted the blows to [Plaintiff], but that the Order did not expressly make that factual statement nor did the Order relate certain factual findings to "any findings about who did what and when." (Mandate at 6.) Finally, the Mandate ordered the district court to "make express fact findings about the specific physical conduct, or lack thereof, of both [Plaintiff] and [Defendant]." (Mandate at 13.)

On October 18, 2005, prior to making the required additional findings, Judge Paine

---

[1] Judgment in favor of the County was affirmed.

[2] Given the Court's factual findings, it is unnecessary to examine the effect of the disparity of size between Plaintiff and Defendant.

2

recused himself [DE 190] and the case was re-assigned to the undersigned [DE 191]. On May 23, 2006, this Court granted Plaintiff's Motion to Recall Witnesses [DE 203].[3] The Court conducted a bench trial on October 17, 2007, and heard testimony from Plaintiff, Defendant and defense witnesses, Dr. Jay Stein and Lieutenant Leonard McMullin. In addition, the parties agreed to designated certain portions of the previous trial transcript for the Court's consideration [DE 238]. Lastly, the parties filed a Supplemental Pretrial Stipulation containing uncontested facts [DE 215].

   II.  Findings of Fact[4]

On November 16, 1994, Plaintiff was being housed at Metro-West as a pre-trial detainee. At approximately 5:00 a.m. on November 16, 1994, Plaintiff was told by the corrections officer assigned to his dorm, John Cowan, that he was going to be transported to Broward County for a court appearance. Plaintiff gathered a change of clothes to take with him during his transport because he wanted to change into these clothes for his court appearance and because he did not want his clothes stolen while he was in Broward County. Officer Cowan told Plaintiff that he could not take the change of clothes with him. A verbal argument ensued between Officer Cowan and Plaintiff, which ultimately led to Officer Cowan calling for backup on the radio.

Officer Cowan and Plaintiff's argument continued into the hallway. While in the hall, the corrections officer assigned to the dorm across the hall, Officer Rafael Pedrero, suggested to Plaintiff that he change his clothes there at Metro-West and wear the clothes he needed for the

---

[3] On December 22, 2006, the Court denied Defendant's Motion for Judgment as a Matter of Law and/or Summary Judgment [DE 222], which Defendant appealed [DE 223].

[4] Unless otherwise noted, these facts are adopted from the parties' Supplemental Pretrial Stipulation [DE 215].

court appearance.  Plaintiff accepted this advice, changed clothes in the hallway of Metro-West, and proceeded down the hall with the rest of the inmates to be transported.  On the day in question, there were as many as one hundred inmates standing in the hall to be transported.  The inmates were dismissed before Plaintiff got to the end of the hallway.

Defendant, the supervising corrections officer on the floor that morning, observed a portion of the verbal altercation between Plaintiff and Officer Cowan.  Defendant was near Officer Pedrero by the elevator when Officer Cowan called for assistance on the radio.  Defendant responded to the call.  Defendant's duty was to maintain custody, security, and control.

Defendant stopped Plaintiff before Plaintiff reached the elevators and told Plaintiff that he did not like the way Plaintiff treated Officer Cowan, and that Plaintiff owed Officer Cowan an apology.  Plaintiff became enraged while listening to Officer Cowan explain to Defendant what had transpired.  Plaintiff was out of control, he would not listen to reason and he would not stay still.  Plaintiff then took an aggressive stance and lunged at Defendant and Officer Cowan.  In an effort to control Plaintiff and to protect himself and Officer Cowan from a potential attack, Defendant spun Plaintiff around, turning Plaintiff's shoulders and pushing his own weight against Plaintiff.  Because Plaintiff was standing next to a wall, Defendant pushed Plaintiff against the wall in order to subdue and handcuff him.  The push against the wall while Defendant was attempting to protect himself and Officer Cowan from a perceived attack is what caused the injury to Plaintiff's mouth.  The Court rejects Plaintiff's testimony that Defendant punched him.[5]

---

[5] These findings are based on Defendant's testimony.  In considering that testimony and observing his demeanor, the Court finds that Defendant was credible and exuded professionalism.  On the other hand, the Court finds that Plaintiff was not credible and his testimony regarding this incident provided no reasonable basis for finding that Defendant punched him.  Lastly, the Court notes that the injury to Plaintiff was consistent with Defendant's

4

Defendant then escorted Plaintiff to the infirmary for medical attention.  At the infirmary, Plaintiff was given a saline solution so he could rinse his mouth and was released back to Defendant.  Plaintiff was then transported from Metro-West to the main jail for the Metro-Dade Department of Corrections, which was approximately 40 miles from Metro-West.  While there, Plaintiff was placed in a holding cell where he waited for law enforcement officers from Broward County to arrive to transport him for his court appearance.  Officers from Broward County arrived but refused to accept Plaintiff for transport to Broward County.  Instead, Plaintiff was transported back to Metro-West.

At approximately 3:00 p.m. that afternoon, Plaintiff was again taken to the infirmary at Metro-West, after he complained of pain.  Based on the diagnosis of the infirmary, Plaintiff was transported to the corrections division of Jackson Memorial Hospital, known as "Ward D."  At Ward D, it was determined that two of Plaintiff's lower teeth had been knocked out of their sockets and another knocked loose.

III. Conclusions of Law

A.  Claims brought pursuant to 42 U.S.C. § 1983

Section 1983 provides a cause of action for constitutional violations committed under color of state law. To prevail, a plaintiff must demonstrate both that a defendant deprived him of a right secured under the United States Constitution or federal law and that the deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir.1998). An excessive force claim alleging violations of the Eighth and Fourteenth Amendments is

---

testimony as well as the testimony of Dr. Stein.

cognizable under section 1983.  Cockrell v. Sparks, 510 F.3d 1307 (11th Cir. 2007).

There is no question here that Defendant acted under color of state law, thus the Court need only address whether Defendant acted in violation of the Eighth and Fourteenth Amendments of the United States Constitution.  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) ("a person acts under color of state law when he acts with authority possessed by virtue of his employment with the state").  Because Defendant has raised the defense of qualified immunity, the Court will address the constitutional violation in the context of this defense.

### B.  Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant who seeks qualified immunity must first establish that he or she was acting within the scope of his or her discretionary authority.[6]  McClish v. Nugent, 483 F.3d 1231,1237 (11th Cir. 2007). Once established, the plaintiff must establish that the defendant has violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Next, the plaintiff must show that the constitutional violation was "clearly established." Id.  In examining the "clearly established" prong, the Court's inquiry involves an examination into "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Bashir v.

---

[6] The parties agree that Defendant was acting in the scope of his discretionary authority at the time of the incident. (Supplemental Pretrial Stip. ¶ 41.)

Rockdale County, Ga., 445 F.3d 1323, 1330 (11th Cir. 2006) quoting Saucier, 533 U.S. at 202.

    1.  Constitutional Violation

In addressing Eighth Amendment claims brought by prisoners, the United States Supreme Court has stated that "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations and quotation marks omitted). In prohibiting "cruel and unusual punishments," the Eighth Amendment guards against the use of excessive physical force against prisoners. See Matthews v. Crosby, 480 F.3d 1265, 1269-70 (11th Cir. 2007) citing Farmer, 511 U.S. at 832.  Likewise, an excessive force claim violates substantive due process rights under the Fourteenth Amendment when the complained-of conduct "shocks the conscience." Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003).[7]

The core judicial inquiry in evaluating a claim of excessive force brought under either constitutional provision is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Whitley v. Albers, 475 U.S. 312, 320-21 (1986).[8]  To that end, the United States Supreme Court has identified five factors to be considered by courts in making this determination: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3)

---

[7] The cruel and unusual punishment clause of Eighth Amendment and the due process clause of the Fourteenth Amendment give prisoners identical protection against excessive force. See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987).

[8] The Mandate ordered the Court to apply the Whitley factors to Defendant's conduct. (Mandate at 13.)

7

the extent of the injury inflicted; (4) the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them and (5) any efforts to temper the severity of a forceful response. Id. at 321.

The Court finds that the use of force in this case served to maintain order in the jail. Plaintiff was extremely agitated when he lunged towards the two officers. Defendant reasonably perceived the aggressive stance and lunge as precursors to physical violence. To maintain order, Defendant needed to prevent an attack against either him, Officer Cowan or both of them. Clearly, then, the use of force was required. Defendant's decision to spin Plaintiff around and place him against the wall while handcuffing him was a sound approach to the perceived threat and evidences Defendant's desire to respond in the least forceful way possible. Nonetheless, Plaintiff did sustain a significant injury. Despite that accidental injury, the Court finds that the amount of force used by Defendant was reasonable given the threat of an attack by Plaintiff.

Notably, the facts of this case are analogous to the facts in Cockrell v. Sparks, supra. In Cockrell, the prison guard needed to move Cockrell, the plaintiff-prisoner, who had been arrested for public drunkenness, into another jail cell in order that another prisoner, who had attempted suicide, could be placed in Cockrell's cell. Cockrell, 510 F.3d at 1309-10. While the guard was attending to the other prisoner's needs, Cockrell, who was still drunk, began making a commotion in his cell. Id. at 1310. The guard opened the door to Cockrell's cell, told him to "shut the hell up" and shoved him with his open hand. Id. Cockrell fell, breaking his hip and wrist and lacerated his ear. Id. With the help of the guard and other prison officials, Cockrell received immediate medical attention and was taken to the hospital for the night. Id.

In considering these facts, the Eleventh Circuit held that the use of force against Cockrell

was not applied in a malicious and sadistic fashion, but was a "good faith effort to maintain or restore discipline in a difficult situation." Id. at 1312.  In so finding, the Court noted that prison officials must be given a "wide range of deference" when "acting to preserve discipline and security," especially when making decisions "at the scene of a disturbance." Id. at 1311 quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).  The Court found that the amount of force used was not disproportionate to the need to restore order when dealing with a drunk inmate, noting that prison guards "need not wait until disturbances reach dangerous proportions before responding." Id. quoting Bennett, 898 F.2d at 1533.

Of particular significance to the instant case is that the Cockrell court found that extensive injuries sustained by a prisoner is not a dispositive factor in finding a constitutional violation, particularly when the injuries could not have been "reasonably anticipated." Id. at 1311-12.  Furthermore, the Court pointed to the use of minimum force by the guard as well as the response of immediate medical attention as additional factors to be weighed against a finding of excessive force. Id. at 1312.   Here, while the injuries were significant (Mandate at 17 n.9), Plaintiff received prompt medical attention.  Furthermore, in an effort to diffuse the disturbance caused by Plaintiff, Defendant applied minimum force on Plaintiff, which had the unfortunate effect of causing substantial injury.

After careful review, the Court finds that the force used was not applied maliciously and sadistically for the purpose of harming Plaintiff.  Instead, Defendant legitimately sought to restore order after the disturbance caused by Plaintiff.  Accordingly, the Court finds that Defendant did not violate Plaintiff's Eighth or Fourteenth Amendment rights.

2. Clearly Established Right

Based on the clear language of the Mandate and the finding of no constitutional violation, it is unnecessary for the Court to determine whether Plaintiff's constitutional rights were "clearly established" for the purposes of qualified immunity.  (Mandate at 14 citing Saucier, 533 U.S. at 200.)

IV.  Conclusion

It is hereby **ORDERED AND ADJUDGED** as follows:

1)	Plaintiff shall take nothing from Defendant.

2)	Judgment shall be separately entered for Defendant.

3)	The Clerk shall close this case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of August 2008.

_____
KENNETH A. MARRA
United States District Judge